Raul Mendez
2712 N Goldeneye Way
Meridian, Idaho 83646
Telephone:  (208) 860-5037
raulmendez2002@gmail.com
Plaintiff Pro Se

U.S. COURTS
SEP 20 2016
Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

RAUL MENDEZ,

    Plaintiff,

Vs.

COMMUNITY HEALTH CLINICS, INC.
dba TERRY REILLY HEALTH SERVICES

    Defendant.

Case No 1:16-cv-425-REB

COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW RAUL MENDEZ, plaintiff pro se and for cause of action against the above-named defendant does complain and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff is bringing suit for economic losses, both past and future, as well as noneconomic damages, both past and future, for violations of his civil rights and for being subjected to discrimination in the workplace on the basis of his race, color and national origin. All such actions by defendant violated the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000.

2. Mr. Mendez seeks damages for the violation of his fifth, eight, and fourteenth amendments under the constitution. 42 U.S.C. 1983.

3. Mr. Mendez further seeks damages against defendant for retaliating after he raised concerns

of fraud by misrepresenting charges being submitted so that defendant could get government monies that they were not entitled to. furthermore, plaintiff raised concerns with defendant about the substandard level with quality of care being provided in X-ray by Medical Assistants. All such actions by defendant violated false claim act/whistleblower protections under 31 U.S.C. 3729.

## PARTIES

4. At all times relevant herein, Mr. Mendez was, and is an adult individual and a citizen of the United States who currently resides and has resided at all times relevant to this action, In Boise, Idaho. Mr. Mendez's ethnicity is Latino of darker complexion and he speaks with an accent.

5. Defendant was, and is a general non-profit corporation duly organized and existing under the laws of the state of Idaho, and in good standing with the Idaho Secretary of State, engaged in the business of providing medical care and services in Canyon county and elsewhere. In addition, defendant has been deemed to be an employee of the public health service by the Department of Health and Human Services and as such they were/are acting under color of State law. Defendant was Mr. Mendez employer from August 2015 until he was terminated in November 2015.

## JURISDICTION AND AVENUE

6. The Court has jurisdiction of this matter pursuant to the Civil Rights Act of 1964, U.S. Const. Amend. V. Amend. VIII. Amend. XIV. and 31 U.S.C. 3729.

7. As the events giving rise to this action all ocurred in the State of Idaho, venue is appropriate in the District of Idaho pursuant to 28 U.S.C. 1391 (a) (2).

## FACTS COMMON TO ALL CAUSES OF ACTION

8. Mr. Mendez began working for defendant on August 20, 2015 when he had a two day orientation along with two other coworkers. We were provided with a new employee packet including "new employee orientation checklist." Plaintiff was made aware during orientation that it is company policy to provide a mentor plus enough training time of approximately one month.

9. On August 24, 2015 plaintiff started to work as a X-ray tech at the "Nampa 1st clinic" under the mentoring of Katia Gillis; the previous tech. She advised plaintiff that defendant refused to comply with their own policy regarding the 30 day training and as result she could only answer questions/train for one day. At the same time, one of the other employees during my orientation was afforded a full month of training. The employee afforded preferential treatment, advantages, and better opportunities to be successful in her position is caucasian.

10. Mr. Mendez interviewed for the X-ray tech position sometime at the beginning of august when he was told that part of the responsibilities included the training/supervision of Medical Assistants taking X-rays at the different satellite facilities. plaintiff was lead to believe that the MA's were competent enough to be taking x-rays and that they did not require much supervision. The Medical assistants are non-licensed providers.

11. Soon after he started working at the Nampa 1st clinic and had the opportunity to review work by the MA's; plaintiff became alarmed with the staggering level of incompetence and neglect by the corporation in putting non-licensed staff with as little as two day training perform full scope Radiology examinations on patients. notably, the majority of patients being seen by defendant are Latino most of whom have darker complexion and speak little to no

English.

12. On or about September 11, 2015, plaintiff met with Don Morrison his direct supervisor regarding issues/concerns with the level of training the mostly Latino MA's have received in X-ray and the substandard quality of care being provided to the mostly latino patient population in Radiology. Mr. Morrison did not seem concerned but stated that he would send the MA's to me for more training (he never did). In addition, I informed Mr. Morrison that I needed more training with the digital software since every Digital Imaging Software is different. At no time during the meeting did defendant relayed any concerns with plaintiff performance or conduct.

13. On October 7, 2015, defendant's Human Resources department was asking for a copy of the completed/signed 'new employee checklist'. This was roughly a little over a month when plaintiff should have been provided with the 30 day training. Mr. Mendez pointed out that he had never been assigned a mentor, a training plan, and I had not been shown many of the items/policies listed on the list.

14. Plaintiff met with Mr. Morrison on October 27, 2015. during the meeting Mr. Mendez was informed that he had to sign the 'new employee checklist'. The meeting was roughly two weeks prior to termination and again plaintiff raised concerns with being asked to sign a document even though he had not been given the 30 day training/mentoring stated on the company policy and when he was still requesting additional training in the digital software in order to better utlize the tools on the system. Defendant refused to provide me with a copy of the signed list. Mr. Mendez, again expressed to Mr. Morrison that the quality of X-rays taken by the MA's was substandard with consistent mispositioning, flawed techniques, clipping of anatomy, etc. Mr. Morrison made the following statement: "this group is not a very smart bunch and they do not

have the capacity to understand some of the more technical stuff. You need to explain things to them in the most simple of terms. they also make a lot of mistakes with medication administration." The organization views the mostly latino MA's as intellectually and capably inferior who are providing care to an inferior group, therefore the lack of concern for quality.

15. From 8/20/2015 to 11/11/2015, plaintiff was asked on multiple occassions by the corporation that in order for them to receive government money that those X-rays taken by the MA's had to be signed off on the electronic health system showing that the X-ray tech (licensed staff) had done them. Notably, the X-ray tech that I replaced had also been asked to misrepresent those charges and she felt that was fraudulent as well. Indeed, Plaintiff expressed concerns to Mr. Morrison and administration about the appearance of trying to deceive in order to get the money.

16. On 10/27/2015 meeting with Mr. Morrison or anytime between 8/20/2015 to 11/11/2015 there were no concerns by defendant with Mr. Mendez performance/conduct that he was made aware off.

17. On 11/5/2015, Mr. Mendez contacted Roxanne Vidales in administration to see if she could facilitate additional training with the digital imaging software. I noted that I made previous unsuccesful attempts to get the training from Mr. Morrison plus I had already signed the 'new employee checklist' when I had not received the training outlined by company policy.

18. Defendant alleges that a meeting was held sometime in mid-day on 11/10/2015 with the Imaging Center of Idaho (ICI) who 'interprets' the x-ray examinations performed at the clinics. In that meeting it was alleged that they had 'difficulties' in the working relationship with Mr. Mendez. Defendant alleges that based on the meeting they made the decision to terminate Mr.

Mendez inmediately.

19. Mr. Mendez met with Mr. Morrison on 11/10/2015 around 4pm and after the defendant's meeting with ICI. Mr. Morrison did not inform Mr. Mendez of any issues/concerns and instead he informed plaintiff not to proceed with the training on the digital software. later on the same day at 6:14pm, Mr. Morrison sent an email informing plaintiff that he wants to "put the training on hold like discussed earlier today and not to move forward with any arrangements until i give you the ok." notably, there was never a single mention of any issues arising in an ICI meeting.

20. On 11/11/2015, Mr. Mendez met with Mr. Morrison, Matt Oates and Shannon Blackstock from Human Resources at 2pm. During the meeting he was informed that he was being terminated due to performance and conduct issues. Ms. Blackstock informed plaintiff that he could appeal his discharge to the Board of Directors but she discouraged me from doing so, since it would not change the decision to terminate my employment.

21. Mr. Mendez termination was due to what defendant claims is "conflict with others." However, plaintiff was made aware by Katia Gillis that a caucasian employee who managed the forntdesk was known to be unproffesional towards staff and patients but somehow she got a promotion. Mr. Mendez on the other hand had no record of misconduct but he got terminated.

22. On 12/16/2015, Mr. Mendez finally got his final paycheck but only after he had to file a wage/hour claim with the Idaho Department of Labor. Mr. Mendez had been told that he would get his final check on 11/15/2015 and his contacts to try to get his final pay went unanswered. plaintiff also asked the IDOL to get a copy of the employee handbook and the 'new employee checklist' since defendant had refused to provide me a copy of them. Today, Mr. Mendez still does not have a copy of the requested documents.

23. On 1/4/2016, Mr. Mendez filed for unemployment insurance but defendant denied it alleging misconduct.

24. On 1/21/2016, as part of the intake questionnaire with the IDOL, Defendant admitted that they do not have any documented warnings/concerns nor that they had ever discussed issues with performance/conduct with Mr. Mendez.  nor was he given a chance to improve his performances.

25. On 2/9/2016, an unemployment appeals hearing took place in front of Judge Kime; a licensed Attorney in Idaho.  Again, defendant representatives provided testimony under oath that they do not have any documentation regarding Mr. Mendez alleged issues with performance/conduct.  Judge Kime determined that the discharge was not related to misconduct.

26. Mr. Mendez asserts both employees who started at the same time on the same orientation were treated vastly different when it came to their training. Plaintiff was only given a single day of training contrary to company policy while the caucasian employee was put in a better position to succeed when she was indeed given the 30 day training.  Mr. Mendez was also terminated without the company following their detailed disciplinary procedures and he was not allowed the opportunity to improve any alleged deficiencies.  in addition, the quality of care being provided to the mostly latino patient is an accurate reflection of how defendant feels towards those with a darker complexion.

27. Mr. Mendez filed a timely charge of discrimination with the Idaho Human Rights Commission.  The IHRC has issued a Right to Sue letter.  Mr. Mendez has also served notice to both the Idaho Attorney General and US Department of Health and Human Services regarding the fraudulent billing charges and substandard healthcare by defendant.  Accordingly, Mr.

Mendez has met and exhausted all administrative prerequisites for bringing this action.

## FIRST CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF RACE

28. Defendant engaged in policies and practices which willfully, intentionally and unlawfully discriminated against Mr. Mendez on the basis of his race.

29. Defendant's conduct as described herein violated Title VII of the Civil Rights Act of 1964, as amended.

30. As a direct and proximate cause of defendat's discriminatory actions, Mr. Mendez has suffered, and will continue to suffer in the future, lost income, lost fringe benefits and lost seniority, the extent of said damages to be proven at trial.

## SECOND CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF COLOR

31. Defendant engaged in policies and practices which willfully, intentionally and unlawfully discriminated against Mr. Mendez on the basis of his race.

32. Defendant's conduct as described herein violated Title VII of the Civil Rights Act of 1964, as amended.

33. As a direct and proximate cause of defendat's discriminatory actions, Mr. Mendez has suffered, and will continue to suffer in the future, lost income, lost fringe benefits and lost seniority, the extent of said damages to be proven at trial.

## THIRD CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN

34. Defendant engaged in policies and practices which willfully, intentionally and unlawfully discriminated against Mr. Mendez on the basis of his race.

35. Defendant's conduct as described herein violated Title VII of the Civil Rights Act of 1964, as amended.

36. As a direct and proximate cause of defendat's discriminatory actions, Mr. Mendez has suffered, and will continue to suffer in the future, lost income, lost fringe benefits and lost seniority, the extent of said damages to be proven at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF U.S. CONST. AMEND. V.   42 U.SC. 1983

37. To state a claim under 42 USC 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by Federal statute proximately caused by conduct of a person acting under color of state law.  Defendant has been deemed to be an employee of the public health service by the Department of Health and Human Services and as such is recipient of substantial government funding.

38. Mr. Mendez was denied any kind of due process by defendant as outlined under their detailed progressive discipline procedures.  He was also denied the training outlined in their company's policy.  Mr. Mendez was subsequently terminated and discouraged to file an appeal with the board of directors.

39. Mr. Mendez has exhausted his administrative procedures under the Idaho Human Rights Commission in which defendant declined mediation after being contacted by the IHRC.

40. Mr. Mendez has been deprived of life, liberty and property as a result of hardship caused by defendant who denied him adequate procedural protection.

## FIFTH CAUSE OF ACTION

### VIOLATION OF U.S. CONST. AMEND. VIII.   42 U.SC. 1983

41. To state a claim under 42 USC 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by Federal statute proximately caused by conduct of a person acting under color of state law.   Defendant has been deemed to be an employee of the public health service by the Department of Health and Human Services and as such is recipient of substantial government funding.

42. Mr. Mendez asserts that his termination constitutes an unusual punishment given the fact that defendant was discussing the postponement of training on the digital imaging software as late as 614pm on 11/10/2015 after the organization had met with the Imaging Center of Idaho regarding alleged issues.   Furthermore, Mr. Mendez asserts that his termination without any kind of opportunity to improve his performance is cruel in light of the fact that defendant swore under oath at the unemployment hearing that they never talked about any concerns/issues with plaintiff, nor that they have any documentation to support the discharge.

43. Mr. Mendez asserts that his termination is a cruel and unusual punishment in light of the fact that two caucasian employees receive the benefit of training and not being discharged respectively.   In other words,   there is unequal opportunity in employment at the company with the caucasian employees clearly enjoying advantages, preferential treatment, and better opportunities to suceed in their respective positions; while still being able to make a living.

## SIXTH CAUSE OF ACTION

### VIOLATION OF U.S. CONST. AMEND. XIV.   42 U.SC. 1983

44. To state a claim under 42 USC 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by Federal statute proximately caused by conduct of a person

acting under color of state law. Defendant has been deemed to be an employee of the public health service by the Department of Health and Human Services and as such is recipient of substantial government funding.

45. Mr. Mendez was denied any kind of due process by defendant as outlined under their detailed progressive discipline procedures. He was also denied the training outlined in their company's policy. Mr. Mendez was subsequently terminated and discouraged to file an appeal with the board of directors.

46. Mr. Mendez has exhausted his administrative procedures under the Idaho Human Rights Commission in which defendant declined mediation after being contacted by the IHRC.

47. Mr. Mendez has been deprived of life, liberty and property as a result of hardship caused by defendant who denied him adequate procedural protection.

## SEVENTH CAUSE OF ACTION
### FALSE CLAIM ACT UNDER 31 U.S.C. 3729

48. Defendant is recipient of significant government funding. In order for defendant to get funding for X-ray they had to certify that a licensed X-ray Tech performed the examinations.

49. Defendant utilizes several Medical Assistants at their facilities, they are non-licensed personnel. Mr. Mendez had the opportunity to supervice the MA's and found a staggering level of incompetence causing to compromise the quality of medical care being received by the mostly low-income/poor latino population.

50. Defendant has only provided as little as two day training to the MA's so that they can perform full scope radiology on patients. Mr. Mendez met with Mr. Morrison and relayed the concerns that the quality of care being offered by the X-ray departments is substandard. Mr.

Mendez suggested additional training, limiting the number of MA's taking x-rays, and limiting the scope of x-rays they were allowed to do. Mr. Morrison is the nursing manager overseeing both the MA's and X-ray but he took no measures to resolve the problem.

51. Defendant is charging full price for suboptimal examinations performed by the MA's. Despite the fact the organization getting all kinds of government money for caring for the poor population. Many of the patients have little money to pay for suboptimal exams.

52. Defendant asked both the previous X-ray tech and Mr. Mendez to falsify x-ray charges on the patient's chart for those exams done by the MA's. Specifically, Mr. Mendez was asked to sign off on the charges so that his name would be 'time stamped' on those exams. The purpose of the deception was so that defendant would get monies from the government that otherwise they are not entitled to due to their decision to utilize MA's in X-ray.

53. Mr. Mendez expressed his concerns with both mr. Morrison and administration regarding the appearance of illegality in the practice and he did not felt comfortable signing off on those charges.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Mendez requests judgment against the corporation as follows:

1. Award Mr. Mendez back pay, pre-judgment interest, back fringe benefits and any other appropriate relief necessary to make Mr. Mendez whole and compensate him for the civil/constitunional rights and other injuries described herein in an amount to be proven at trial;

2. Award Mr. Mendez front pay, front fringe benefits and other future compensation in an amount to be proven at trial;

3. Award compensatory damages for emotional distress, pain and suffering and other non-economic damages in an amount to be proven at trial;

4. Award Mr. Mendez the costs of this action, including reasonable attorney' fees should he retain one in the future pursuant to 42 U.S.C. 2000;

5. Award Mr. Mendez punitive damages for the Corporation's violations of Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. 2000;

6. Award Mr. Mendez such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Mr. Mendez hereby demands a trial by jury on all issues properly triable to a jury in this action.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

DATED September 19, 2016

/Raul Mendy/