UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAUL MENDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMUNITY HEALTH CLINICS, INC, dba TERRY REILLY HEALTH SERVICES,<br><br>    Defendants. | Case No. 1:16-cv-00425-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Raul Mendez's Motion for Leave to Amend Complaint. Dkt. 36. The Motion is fully briefed and ripe for decision. Having reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending Motion on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

Mendez filed this case against Community Health Services, Inc. ("Community Health") as a *pro se* litigant on September 20, 2016. Dkt. 2. In his Complaint, Mendez generally alleges that Community Health discriminated against him on the basis of race, color, and national origin.

Among other allegations in relation to his claims of discrimination, Mendez claims he did not receive the same training as a Caucasian employee who was similarly situated in the same work position of X-Ray technician at Community Health. While employed by Community Health, Mendez spoke with the nursing manager, his supervisor, about his concerns that the company was engaging in potentially fraudulent behavior. Mendez claims the clinic was requiring that employees represent that an X-ray technician performed the X-ray procedures even though, in practice, lesser-trained medical assistants were performing them. Mendez asserts he was ultimately fired from his position at Community Health for raising these concerns.

After Community Health filed its Answer to Mendez's complaint, the Court entered a case management order requiring the parties to file all motions to amend no later than February 8, 2018. Dkt. 24, at 2. Neither party filed such a motion prior to the expiration of the deadline. However, Mendez filed a Motion for Leave to Amend Complaint on March 4, 2019. In his Amended Complaint, Mendez seeks to add an additional Title VII claim of employer retaliation under the First Amendment. *See* Dkt. 36.

# III. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, when—as in this case—a party files a motion to amend after the Court's case management deadline to amend has passed, district courts in the Ninth Circuit apply Federal Rule of Civil Procedure 16(b), followed by a Rule15(a) analysis. *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). If the party seeking amendment establishes "good cause" under Rule 16, the party then must demonstrate that amendment is proper under Rule 15. *Johnson*, 975 F.2d at 609.

Rule 16's good cause inquiry focuses primarily on "the diligence of the party seeking the amendment." *Id.* "Rule 16 was designed to facilitate more efficient disposition of cases by settlement or by trial. If disregarded it would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Walker v. City of Pocatello*, 2017 WL 1650014 at *1 (D. Idaho May 1, 2017) (quoting *Johnson*, 975 F.2d at 610); *see also Simplot Livestock Co. v. Sutfin Land & Livestock*, No. 116-CV-00139-EJL-REB, 2018 WL 563142, at *1 (D. Idaho Jan. 25, 2018). The Ninth Circuit has instructed that a "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the

diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

In contrast, under Rule 15, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend lies within the sound discretion of the trial court, which "must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The Rule 15 "policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Nevertheless, the Supreme Court has instructed district courts to consider the following factors when deciding whether to grant leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. ANALYSIS

In the present case, all motions to amend or to join parties were due no later than February 8, 2018. Dkt. 24, at 2. Mendez did not file his Motion for Leave to Amend until March 4, 2019— more than one year after the applicable deadline. Accordingly, Mendez's request for amendment is governed by Rule 16(b), and is then subject to analysis under Rule 15(a). The Court will address each standard in turn.

A. Good Cause

In his motion—as justification for his late filing—Mendez states "he has had the opportunity to do legal research that allowed him to discover case law applicable to the facts on his case." Dkt. 36, at 1. Seeing as Mendez is a *pro se* litigant, allowing for more lenient deadlines may seem to be in the interest of justice. However, the Court has reminded Mendez that he is "subject to the same rules of procedure and evidence" as parties represented by counsel. Dkt. 6, at 3. Furthermore, the delay in this case is substantial. Mendez requested leave to amend more than one year after the deadline. At no time did Mendez seek an extension of that deadline.

Further, Mendez notes that in his original complaint he stated that Community Health retaliated against him but that the Court dismissed this claim on March 25, 2017, because he could not proceed as a *pro se* litigant pursuant to the law he chose to file under—the False Claim Act. Dkt. 36-2, at 3. It has been nearly two years since that claim was dismissed. Said differently, by Mendez's own admissions, he knew of a possible retaliation claim years ago, was aware of the facts that might have allowed for a retaliation claim, and yet still failed to file for leave to amend until now.

Although the Court recognizes Mendez's status as a *pro se* litigant, the Court finds that the deadline could have been met with enough diligence on Mendez's part. Were the court to allow a year extension to the deadline—or a two-year delay following notice of a plausible cause of action—the 16(b) "good cause" standard requiring that leave to amend only be granted where the deadline *could not* have been reasonably met would essentially

become unworkable In short, Mendez has not met his burden of establishing good cause in support of his tardy Motion to Amend.

B. Futility

The above shortcomings aside, the Court will briefly address the substance of Mendez's Motion. While such is not required—after all, the Court finds no good cause exists under Rule 16 to allow the requested amendment, and therefore, addressing Rule 15 is superfluous—a short discussion is necessary as both sides miss the mark as it relates to First Amendment retaliation claims.

The Ninth Circuit has established a five-question test to evaluate First Amendment retaliation claims, one of which includes the requirement that the plaintiff speak as a "private citizen" rather than as a "public employee" *Gibson v. Office of the AG*, 561 F.3d 920, 925 (9th Cir. 2009) (citing *Eng. V. Cooley*, F.3d 1062, 1070 (9th Cir. 2009)). If Mendez were to fail on this threshold question—because he was speaking as a public employee— his retaliation claim would likewise fail.

Community Health argues that Mendez cannot meet this requirement, reasoning that all Mendez's conversations were "work related" and thus he was speaking pursuant to his official duties as a public employee, not a private citizen. *See* Dkt. 37, at 8-9. Community Health cites *Hagen v. City of Eugene*, 736 F.3d 1251, 1258 (9th Cir. 2013), a case in which the court found a police officer was speaking as a public employee because he was reporting safety concerns in accordance with his official written duties to report safety concerns. However, in this case, Mendez had no official duty to raise legal concerns with his employer. An employee is not simply pursuing his official duties when

he decides to confront his employer with concerns that his employer is asking him to repeatedly perform an illegal activity. In fact, in *Hagen*, the court stated that, contrary to Community Health's assertion, the fact that an employee's speech "concerned the subject matter of [his] employment]" was not dispositive. *Id.* The *Hagen* court also wrote, a "public employee's speech on a matter of public concern is protected if the speaker had no official duty to make the questioned statements, . . . or if the speech was not the product of performing tasks the employee was paid to perform." *Id.*

Mendez alleges that he talked with his supervisor and administration about potentially fraudulent behavior, stating that he was asked by Community Health to misrepresent on the electronic health system that he, as an X-ray technician, had performed the X-rays, instead of medical assistants. Dkt. 36-2, at 2. He raised these concerns internally, but constitutional freedom of speech is not "lost to the public employee who arranges to communicate privately with his employer rather than spread his views to the public." *Givhan v. Western Line Cons. Sch. Dist.*, 439 U.S. 410, 415 (1979). Mendez was speaking to his employer about its practice related to the work of medical assistants, administrators, and X-ray technicians, but he was not acting under some official duty defined in his job description when he confronted his employer about his employer asking him to commit fraud. Accordingly, the Court does not find Mendez's First Amendment claim to be futile in the sense that he was somehow speaking as a public employee.

Community Health further argues Mendez is barred from bringing a retaliation claim because he failed to exhaust his administrative remedies by filing a timely charge

with the Equal Employment Opportunities Commission through the Idaho Human Rights Commission. Dkt. 37, at 5. However, Mendez's retaliation claim is being filed under the First Amendment. The IHRC has jurisdiction over Title VII retaliation claims, not First Amendment retaliation claims. *See* Idaho Code Ann. § 67-5901, § 67-5906(1). Title VII forbids an employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" by Title VII (such as discrimination on the basis of race), or the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

Thus, if Mendez were making a Title VII claim, it might have been barred because Mendez did not select "retaliation" on his Title VII form with the Idaho Human Rights Commission. Dkt. 37-1. However, Mendez does not assert that he was retaliated against because he filed a charge alleging employment discrimination, but rather that he was retaliated against because he vocalized opposition to the potentially fraudulent actions of Community Health. Dkt. 36-2, at 2. It is these actions by Community Heath that Mendez asserts infringed on his First Amendment rights. Therefore, whether he properly filed with the IHRC is irrelevant for purposes of his First Amendment retaliation claim. So, Mendez's claim is not futile in this sense, either.

While the Court sought to clarify the record and legal arguments at issue in the present motion, such a finding does not outweigh the Court's initial analysis related to good cause. Mendez admits he knew about this claim—in fact he already tried to plead a claim similar to it—and has not meet his burden in establishing any good cause exists

MEMORANDUM DECISION AND ORDER – 8

that might excuse his failure to amend his complaint prior to the applicable deadline—or anytime over the last two years.

Accordingly, the Court's analysis stands. The Motion must be denied.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Mendez's Motion for Leave to Amend Amended Complaint (Dkt. 36) is DENIED.

DATED: May 29, 2019

David C. Nye
Chief U.S. District Court Judge