UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAUL MENDEZ, | Case No. 1:16-cv-00425-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| COMMUNITY HEALTH CLINICS, INC, dba TERRY REILLY HEALTH SERVICES, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court are various motions filed by the parties in this case. Defendant Community Health Services, Inc. ("Community Health") has filed its Second Motion to Dismiss and for Sanctions (Dkt. 50), and a Motion to Strike (Dkt. 67). Plaintiff Raul Mendez has filed his Second Motion to Compel (Dkt. 61), a Motion for Sanctions (Dkt. 62), and a Second Motion for Leave to Amend (Dkt. 63).

Having reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case has a somewhat lengthy and complicated history. To understand the

posture of the current motions—as well as the Court's overarching decision of dismissal today—some of that history must be recounted.

Mendez filed this case against Community Health as a *pro se* litigant on September 20, 2016. Dkt. 2. In his Complaint, Mendez alleges that Community Health discriminated against him on the basis of race, color, and national origin. Discovery proceeded in a relatively normal fashion, albeit with many extensions of the discovery deadlines.[1]

On March 4, 2019, Mendez filed a Motion to Amend Complaint. Dkt. 36. In this Motion, Mendez sought to amend his complaint to add a First Amendment Retaliation claim. *Id.* After briefing, the Court issued a Decision on May 29, 2019. Dkt. 40. In that Decision, the Court found that: 1) Mendez could not justify the tardiness of his motion (having filed it approximately 13 months *after* the motion to amend deadline); and 2) timing aside, Mendez did not have sufficient evidence to support such an amendment. In short, the Court denied Mendez's Motion to Amend. *Id*.

On May 9, 2019—prior to the Court's Decision on Mendez's Motion to Amend being issued—Mendez filed a Motion to Compel. Dkt. 39. In this Motion, Mendez asserted that Community Health failed to respond to various discovery requests. *Id*.

On June 24, 2019, Mendez filed a Motion for Reconsideration asking the Court to reconsider its decision on his Motion to Amend Complaint. Dkt. 41.

On August 12, 2019, Community Health filed a Motion to Dismiss or in the Alternative, Motion to Compel Deposition and for Sanctions (Dkt. 43) alleging that

---

[1] Some of these extensions were sought by the parties, others were necessary due to the Court's heavy docket and the time it took to address pending motions.

Mendez failed to appear for his scheduled deposition without justification. Community Health sought case-terminating sanctions against Mendez for his actions or, alternatively, for the Court to compel Mendez to appear at his deposition. Dkt. 43.

On January 22, 2020, the Court issued a Memorandum Decision and Order addressing these three pending motions—Mendez's Motion to Compel, Mendez's Motion for Reconsideration, and Community Health's Motion to Dismiss or in the Alternative, Motion to Compel Deposition and for Sanctions. Dkt. 49.

The Court began by discussing Mendez's Motion to Compel. After reviewing the relevant facts, the Court determined that Community Health had *likely* already turned over the information Mendez sought, but also noted that Community Health had completely ignored the actual deadline by which it was required to respond to Mendez's request. The Court granted Mendez' Motion to the extent that Community Health was required to produce any discovery that was left outstanding and sanctioned Community Health for its failure to timely respond to the underlying requests. Dkt. 49, at 3-4.

The Court next reviewed all of Mendez's new arguments related to his Motion to Amend, but ultimately denied his Motion for Reconsideration noting that there was no basis for the Court to reconsider its prior findings. *Id*. at 6-7

Finally, the Court analyzed Community Health's Motion to Dismiss or in the Alternative, Motion to Compel Deposition and for Sanctions. In its discussion, the Court noted that Mendez's behavior—of simply failing to show up—was inappropriate. It found, however, that case-terminating sanctions were not appropriate at that time. The Court granted Community Health's Motion, ordered the parties to find a mutually agreeable date

MEMORANDUM DECISION AND ORDER – 3

for a new deposition, and ordered Mendez to appear "or face sanctions." *Id*. at 7-8. The Court also set February 29, 2020, as the deadline by which Mendez's deposition had to occur and March 31, 2020, as the deadline for all dispositive motions. *Id*. at 10.

On March 25, 2020, Community Health filed its Second Motion to Dismiss and For Sanctions. Dkt. 50.[2] While the Court will delve heavily into the background and substance of these matters below, it notes here that Community Health filed this motion after Mendez failed, *again*, to appear for his deposition as ordered by the Court. *See generally id.* Mendez's response to Community Health's Motion was due on or before April 15, 2020.

On March 30th and 31st, Mendez informally reached out (via email) to the Court's law clerk and indicated that as a *pro se* litigant with limited access to technology, it would be nearly impossible for him to respond to Defendant's motion with the COVID-19 pandemic raging and the Governor of Idaho's stay-at-home order in place. The Court's law clerk advised Mendez that he should coordinate with opposing Counsel regarding an extension and file a stipulation (or motion if necessary) regarding a new deadline for his response brief.

It does not appear that Mendez coordinated with opposing counsel as suggested by the Court's law clerk, but instead filed a Motion for Extension on April 5, 2020. Dkt. 53. In his motion, Mendez reiterated that because of the COVID-19 pandemic—specifically the Governor of Idaho's stay at home order issued on March 25, 2020—he did not have

---

[2] Community Health's original motion (Dkt. 50) violated District of Idaho's Local Civil Rule 7.1 in that in exceed the 20-page limit for briefs. It appears Community Health realized this error as it submitted a revised brief that complied with rule 7.1 two days later (Dkt. 52).

access to the local library where he typically researched the law and drafted materials for his case. *Id*. In light of these limitations, Mendez asked for an extension of time of 45 days—or until May 20, 2020—in which to respond to Community Health's Second Motion to Dismiss. *Id*.

Community Health opposed Mendez's motion, asserting that he had not met the necessary good cause requirements for an extension and that, even if he had, 45 days was excessive. Dkt. 55.

Ultimately, the Court decided an extension was warranted due to the COVID-19 pandemic but gave Mendez 30 extra days in which to respond, as opposed to the 45 days Mendez sought. Dkt. 56, at 3-4. Mendez's new deadline was May 15, 2020.

Mendez informally contacted the Court again on May 3, 2020, indicating he would need more time to finish his response and "other additional pleadings." The Court's law clerk instructed Mendez to coordinate with Community Health and, if necessary, to file another motion for an extension.

On May 8, 2020, Mendez filed his Second Motion for Extension of Time. Dkt. 57. Citing again to the COVID-19 pandemic and his inability to access the local library, Mendez asked for another extension of up until June 1, 2020, in which to respond to Community Health's Second Motion to Dismiss. *Id.*

Community Health opposed Mendez's second motion, noting specifically that Mendez had not tried—as the Court suggested in its prior order—to find other means or methods (besides the local library) by which to conduct his business. Dkt. 59. Community Health also noted that Mendez had, once again, failed to contact them in order to resolve

this matter informally without the need for a motion.[3] *Id.*

The Court returns to Mendez's Second Motion for Extension. In its subsequent Decision on that motion, the Court noted that Mendez had "continually failed to abide by the Court's informal and formal instructions that he needs to communicate with opposing counsel on all issues." Dkt. 60, at 3. Despite this—and over the strong objections of Community Health—the Court once again granted Mendez's Motion and gave him until June 1, 2020, to file his materials but noted that "no further extensions [would] be granted." *Id.* at 4.

On May 29, 2020, Mendez filed a slew of Motions.

First, Mendez filed a Second Motion to Compel. Dkt. 61. This motion relates back to Mendez's first Motion to Compel and the Court's prior decision. In short, Mendez again seeks discovery from Community Health that was, purportedly, never turned over. *Id.*

Second, Mendez filed his own Motion for Sanctions against Community Health, alleging that they are harassing him by filing their motions for sanctions. Dkt. 62.

Third, Mendez filed a Second Motion for Leave to Amend Complaint. Dkt. 63. This motion is related to Mendez's first Motion to Amend (Dkt. 36) and the Court's prior decisions—on the motion itself (Dkt. 40), and on reconsideration (Dkt. 49).

Fourth, and finally, Mendez responded to Community Health's Second Motion to Dismiss. Dkt. 65. Unfortunately, Mendez's Motion was 30 pages in length—ten pages over

---

[3] The Court notes that each party in this case continually and repeatedly brings up the same points in each motion and in each response. These "common threads" are as follows: Community Health's continued complaint that Mendez does not communicate with them or respect their schedule or the Court's; Mendez's repeated complaint that Community Health has failed to provide him with appropriate discovery and that their failure has hindered every other aspect of the case.

the District of Idaho's local rule regarding page limitations. In light of this error, the Court struck Mendez's filing and gave him another ten days, or until June 10, 2020, to file a memorandum in compliance with the rules. Dkt. 66.[4]

On June 3, 2020, Community Health filed the currently pending Motion to Strike. Dkt. 67. In this Motion, Community Health seeks to strike Mendez's Second Motion to Compel (Dkt. 61), Motion for Sanctions (Dkt. 62), and Second Motion for Leave to Amend Complaint (Dkt. 63) for various reasons. *Id.*

On June 10, 2020, Mendez filed a Motion for Extension of Time. Dkt. 68. In this Motion, Mendez asked that his deadline for filing his shorter brief in response to Community Health's Motion to Dismiss be extended until June 24, 2020—the date his response to Community Health's Motion to Strike was due. Community Health objected to the Motion noting: 1) that Mendez had already been given numerous extensions already; 2) that unbeknownst to them (and the Court) Mendez was apparently using all of the previously granted extensions to prepare three new motions (as opposed to focusing on his response brief); 3) that the timestamp on Mendez's filing was almost 11:00pm at night and that no libraries are open at that time (undercutting Mendez's argument throughout these recent events that he *needed* access to a library to complete tasks); and 4) that the Court had already warned Mendez that no further extensions would be granted. *Id.*

---

[4] In its order, the Court specifically stated that Mendez's brief could not exceed 20 pages. Dkt. 66. Via email, the Court's clerk erroneously said that Mendez's motion was "5 pages over length" (thus, appearing to suggest Mendez could file a brief of up to 25 pages). In a subsequent order, the Court noted this error, and again told reminded Mendez that his brief was limited to 20 pages. Dkt. 70, at 2. Mendez's subsequent brief was 24 pages. Dkt. 71.

The Court shared Community Health's concerns. Nevertheless, over Community Health's strong objections, the Court again granted Mendez's Motion and gave him an additional nine days (until June 19, 2020) in which to file his shortened Response. Dkt. 70. The Court reiterated that Mendez's response to Community Health's Motion to Strike was due on June 24, 2020, and instructed Community Health to file all of its reply briefs by July 2, 2020. *Id.*

The parties complied. The Motions are now ripe for the Court's consideration. While the Motion to Dismiss is dispositive of this case (and arguably moots the remaining Motions) the Court will address each motion. It does this for two reasons. First, there are independent reasons that justify granting Community Health's Motion to Strike. Second, Mendez has already indicated his intent to appeal this case should anything not go his way. A thorough record will thus be helpful.

## III. DISCUSSION

### A. Motion to Strike (Dkt. 67)

#### 1. *Introduction*

As noted, Community Health filed this Motion to Strike in response to Mendez filing three other motions: his Second Motion to Compel (Dkt. 61), his Motion for Sanctions (Dkt. 62), and his Second Motion for Leave to Amend (Dkt. 63). Community Health relies on Federal Rule of Civil Procedure 12(f) and a somewhat lose "claim" for abuse of process in support of its Motion to Strike. Dkt. 67, at 2-3.

#### 2. *Legal Standard*

First, Federal Rule of Civil Procedure 12 provides the court a basis to "strike from

a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (cleaned up).

Second, a claim for abuse of process involves two elements: "(1) a willful act in the use of legal process not proper in the regular course of the proceeding that was (2) committed for an ulterior, improper purpose." *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, No. 4:16-CV-00427-DCN, 2018 WL 1460970, at *2 (D. Idaho Mar. 23, 2018). "The crucial inquiry is whether the judicial system's process . . . has been misused to achieve another, inappropriate end." *Ramirez v. United States*, 93 F. Supp. 3d 1207, 1232 (W.D. Wash. 2015) (cleaned up).

### 3. Analysis

While Community Health puts forth individualized reasons for denying each of Mendez's three new motions, its overarching argument is that all three motions are untimely, immaterial, or moot and should be stricken. Under the circumstances, the Court must agree.

### a. Second Motion to Compel (Dkt. 61)

In his Second Motion to Compel, Mendez argues that Community Health needs to send (or resend) him copies of their initial disclosures from November 8, 2017, and supplement its responses pursuant to the Court's January 22, 2020 Order. Mendez also reasserts his general belief that Community Health is withholding relevant discovery from

him.

As will be explained in the Court's discussion regarding Community Health's Second Motion to Dismiss, Community Health has been very accommodating in providing Mendez with copies of discovery material—in digital and paper form. Substantively, however, the Court notes that the information Mendez seeks at this point has, by all accounts, been produced to him on numerous prior occasions. On June 15, 2019, Community Health emailed Mendez a drop-box link with all of its initial disclosures. It also mailed a CD to Mendez containing the same information. Following the Court's January 22, 2020 order in which the Court sanctioned Community Health for failing to timely respond to Mendez's requests, Community Health sent the materials to Mendez again. Then, when Mendez complained he could not access the documents, Community Health went to the effort to print them out and delivered hard copies (totally over 500 pages) to Mendez. In addition, Community Health supplemented its responses—per the Court's January 22, 2020 order—and provided everything Mendez requested.

As far as the Court can tell, Community Health has turned over (in some instances repeatedly) the information Mendez seeks. Importantly, Community Health affirmatively shows that it has already produced all of the discovery Mendez identifies in his motion as outstanding. Accordingly, Community Health's Motion to Strike is GRANTED and Mendez's Motion to Compel is STRICKEN as MOOT.

   b.   <u>Motion for Sanctions (Dkt. 62)</u>

As noted, Mendez's basis for his Motion for Sanctions appears to be his beliefs that Community Health has provided false information to the Court and that Community Health

is harassing him by filing its Motions to Dismiss and for Sanctions. The Court rejects both arguments.

First, Mendez does not cite to any false information per se, but seems to suggest that because the Court sanctioned Community Health for not timely responding to his discovery requests, they are somehow tainted and deserve further sanctions. The Court, however, has already dealt with these matters and will not impose further penalties on Community Health. As part of its prior decision, the Court determined that certain sanctions were, in fact, necessary in light of Community Health's failure to timely respond to Mendez's discovery requests. Those sanctions included: 1) deeming Mendez's Requests for Admissions admitted; 2) a finding that further material might be admitted or excluded prior to trial; and 3) a monetary sanction in the amount of $236.59. Dkt. 49, at 4, 9. Such sanctions stand, but there is no need for further sanctions on matters already decided. Moreover, without any actual evidence or examples of further misbehavior, the Court will not randomly impose additional sanctions on Community Health.

Second, Mendez claims that Community Health is harassing him by filing motions to dismiss and complains that Community Health did not apprise him or the Court's law clerk that it would be filing such motions. As a threshold matter, the Court notes there is no need to alert another party to the filing of any motion and rarely is there a time when the Court's law clerk needs to be made aware of any incoming filing. Furthermore, the filing of a motion—even a motion for dismissal or sanctions—does not, in itself, constitute harassment. Mendez's allegations are baseless and immaterial. Community Health's Motion is accordingly GRANTED and Mendez's Motion for Sanctions is STRICKEN as

frivolous.

   c.  <u>Second Motion for Leave to Amend (Dkt. 63)</u>

Hearkening back to his Motion for Leave to Amend (Dkt. 36) and Motion for Reconsideration (Dkt. 41), Mendez claims that the Court should give him another opportunity to amend in order to add a new claim under the Federal Tort Claims Act. Critically, this plea differs slightly from the basis for Mendez's prior motion for leave to amend, wherein he sought leave to add a claim for First Amendment Retaliation. The Court, however, will not delve into these nuances for two reasons.

First, insofar as any of Mendez's current concerns are related to those he raised in his prior Motion to Amend and Motion for Reconsideration, the Court notes it already analyzed those arguments at length (twice) and, after its second review, noted that Mendez "[would] not be allowed to file an amended complaint." Dkt. 49, at 7.

Second, insofar as any of Mendez's arguments are "new" and/or support a slightly different cause of action than that for which he has already sought leave to amend, the Court reiterates that the time for amendment has long since passed. Mendez was over a year late in bringing his motion to amend in March of 2019. A Motion brought in May of 2020 is all the more untimely. In short, any arguments that hearken back to prior motions have already been litigated and are moot, and any new arguments are extremely untimely. Therefore, the Court GRANTS Community Health's Motion. Mendez's Second Motion to Amend is STRICKEN as UNTIMELY and MOOT.

   *4.  Conclusion*

In addition to the Court's individualized findings that Mendez's three motions

MEMORANDUM DECISION AND ORDER – 12

should be stricken pursuant to Rule 12(f), the Court agrees with Community Health that each represents an abuse of process. To be sure, Community Health has not filed a counterclaim for abuse of process, however, their point is well taken and acts as a second, and overarching, reason to strike each of Mendez's three motions.

"The gist of the tort of abuse of process is misusing the process justified in itself for an end other than that which it was designed to accomplish." *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1252 (9th Cir. 1987) (cleaned up).

Here, the Court granted Mendez numerous extensions based upon his purported difficulty accessing technological resources (computers, scanners, printers etc.) during the COVID-19 pandemic. The Court granted each of those extensions with the understanding that each was needed in order for Mendez to prepare a response to Community Health's pending Motion to Dismiss, not to prepare additional motions.[5] To use that time to prepare three additional Motions—two of which were repetitive of prior motions which had already been ruled upon—was frankly an abuse of the Court's generous orders.

In sum, the Court finds Community Health's Motion to Strike well taken. Each of Mendez's Motions (Dkts. 61, 62, 63) are STRICKEN.

### B. Second Motion to Dismiss and for Sanctions (Dkt. 50)

Before discussing Community Health's current Motion to Dismiss, the Court will

---

[5] To be fair, the Court did not *specifically* ask Mendez what he needed the additional time for. Also, on more than one occasion, Mendez stated he needed more time to prepare "briefs" and "materials" (i.e. plural), and on more than one occasion the Court said Mendez could have the time to prepare his "briefs." Again, however, the Court was operating under the assumption that Mendez was working on the currently pending Motion to Dismiss and that any reference to "briefs" or "materials" was in that context (i.e. supporting materials or other attachments *for that brief*). In any event, the Court did not think Mendez was going to conjure up three entirely new motions during the extra time it allotted him.

MEMORANDUM DECISION AND ORDER – 13

briefly review Community Health's first Motion to Dismiss. Next, the Court will examine (in greater detail) the factual background giving rise to this Motion. Finally, the Court will address the merits of Community Health's Motion to Dismiss.

   1.  *First Motion to Dismiss (Dkt. 43) and Decision (Dkt. 49)*

In its first Motion to Dismiss (Dkt. 43), Community Health explained that Mendez was scheduled to appear for his deposition on a date certain but that when that date came, Mendez failed to appear without providing any explanation. Dkt. 43-1, at 2–3. Community Health sought case-terminating sanctions as a result of Mendez's failure to appear, or at the very least, an order from the Court compelling Mendez to appear for his deposition. Additionally, Community Health sought reimbursement of the expenses it paid the Court Reporter the day Mendez failed to appear—$236.59. *Id.* at 3.

In briefing, Mendez explained that he did not show up for his deposition because he had yet to receive responses to his discovery requests. The Court weighed the evidence and found that "case-terminating sanctions—such as dismissal—[were] 'harsh,'" "should 'be imposed only in extreme circumstances,'" and that Mendez's "failure to appear [was] not a circumstance that warrant[ed] full dismissal of [his] case." Dkt. 49, at 8 (citing *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). The Court noted however that "Mendez's 'tit-for-tat' behavior—that he didn't need to appear as scheduled because Community Health hasn't responded to his discovery requests—[was] not appropriate," and that "Mendez's behavior—[of] simply doing nothing—[was] not in line with the Court's expectations of fair play in litigation . . . ." *Id.* Additionally, the Court determined that under Rule 37, Community Health was entitled to a remedy for Mendez's failure to appear

at his deposition and sanctioned Mendez $236.59—the amount necessary to reimburse the
court reporter who had appeared that day.[6]

Ultimately, the Court instructed the parties to work together "to find a suitable date
and time" to hold Mendez's deposition and set a deadline of February 29, 2020, for said
deposition to take place. The Court also explicitly stated that "Mendez shall appear for the
deposition *or face sanctions*." *Id*. at 8 (emphasis added).

### 2.  Background

The Court issued its prior Decision (denying Community Health's Motion to
Dismiss and commanding Mendez to appear for his deposition) on January 22, 2020. Dkt.
49. As noted, the Court gave the parties until February 29, 2020—approximately five and
a half weeks—in which to schedule and hold Mendez's deposition.

Immediately following the Court's order, Community Health's Counsel reached out
to Mendez to schedule his deposition. Dkt. 50-2, at 18-19. After coordinating schedules,
Mendez agreed that his deposition could take place on February 20, 2020. *Id*. at 20. When
he agreed to this date, Mendez explained that he was still reviewing the Court's order and
that he would need various records in order to prepare for his deposition. *Id.* Community
Health's counsel responded to Mendez's comment explaining that it had already provided
him with *all* the discovery in the case. *Id.* at 22. Mendez disagreed, said he intended to file
yet another request for discovery, and opined that it would be interesting "should this case

---

[6] The Court, however, likewise found that Mendez was entitled to a remedy in light of Community Health's
failure to timely respond to discovery. Mendez's "award" was waiving the $236.59 fee imposed. Thus,
while both parties were sanctioned monetarily, the sanctions cancelled each other out.

end up on appeal." *Id.* at 25. Community Health's Counsel responded again, advised Mendez that he should simply follow the Court's order, and said it would send him anything he needed in order to prepare for his deposition. *Id.* Mendez indicated that he could not open the CD containing discovery that Community Health sent him and requested paper copies. *Id.* Community Health printed and delivered over 500 pages of documents to Mendez. Dkt. 50-1, at 4.

The above emails took place between January 28, 2020, and February 2, 2020. Community Health provided hard copies of all discovery to Mendez on February 5-6, 2020.

After the close of business on February 6, 2020, Mendez emailed the Court's law clerk. Dkt. 50-2, at 38. In his email, Mendez raised various concerns about how the case was proceeding and noted he did not think he would have time to prepare for his deposition on February 20. Mendez specifically stated, "if I'm asked if I'm ready for the deposition I will answer that i'm not because I haven't had the time to prepare for it."[7] *Id*.

On February 7, 2020, the Court's law clerk responded to Mendez's email[8] and offered the following:

> If you have concerns about the timing of the deposition, I encourage you to work with opposing counsel. If you need to extend the timeframe outlined by the Court, you may file a motion to do so (or a stipulation indicating you

---

[7] The Court highlights this comment because it appears Mendez already seemed to know—two weeks before his deposition—that he was not going to be ready. If Mendez knew that far in advance that he was going to need more time, he could have easily motioned the Court for an extension. In addition, this is something of a self-fulfilling prophecy. Mendez made no indication that he would try to get ready by February 20th; rather opting to affirmatively state he *would not* be ready by February 20th.

[8] Mendez frequently emails the Court's law clerks—in this case as well as his other cases—to ask procedural questions. The Court's law clerks have been given permission to respond to Mendez's emails and provide guidance on procedural matters, but have been instructed not to opine on legal issues or give legal advice. Opposing counsel is always copied on any communications between the Court and Mendez.

and opposing counsel have agreed on a new date). I strongly recommend taking all necessary action to ensure the deposition moves forward in some fashion–Judge Nye's order was clear that failure to appear for a scheduled deposition could result in sanctions.

*Id*. at 37. Days passed without a response (or motion) from Mendez.

On February 12, 2020, Mendez responded to the Court's law clerk and indicated he would "try and review everything" before the deposition, but that "in all likelihood, I might need to reschedule." *Id.*

On February 16, 2020 (a Sunday), Mendez emailed Community Health's counsel. *Id*. at 40. Mendez stated that he did not think he would be ready for the deposition because he still needed to review a lot of information. He also asked (again) for additional discovery he believed he was missing.

On February 18, 2020, Community Health's counsel emailed Mendez. In her email, counsel expressed confusion as to why Mendez could not be ready for his deposition when "most, if not all of the materials produced [are] documents you've seen, authored, or been aware of since at least the time the IHRC was investigating your claims [which occurred years ago]." *Id*. at 41. Counsel went on to state that "if you are proposing a different date for our deposition, I need to know that immediately so we can consider your request." *Id*.

The following day—February 19 (the day before the deposition)—Mendez called Community Health's counsel's office. He told a staff member that he was not ready for his deposition the following day. *Id.* at 44. This staff member then got a hold of Community Health's lead counsel who tried to call Mendez back to discuss matters. Mendez did not answer but sent a text later that day stating that he could not "attend the deposition because

I'm not ready." Dkt. 50-2, at ¶ 9. Mendez indicated that he "had a medical problem and would send an email with his explanation and documentation." *Id.*

That night at approximately 7:00 p.m., Mendez sent Community Health's Counsel an email. In his email, Mendez explained, in part:

> I haven't had time to review all the record even assuming it is just the IHRC filing. I still have to review the entire case prior to the deposition to give myself the best chance. I haven't been able to get thru the records because I've been feeling weak and lightheaded. Apparently, it is due to rare premature ventricular contractions cause by an incomplete right bundle branch block. I'm not making up excuses about not being ready for the deposition. If I was healthy then I would have gotten thru it before tomorrow. I suppose the deposition will have to rescheduled once I have gone through everything. I will let you know.

*Id.* at 45. Attached to this email were two medical "documents." The first page is some type of cover sheet dated January 20, 2020, but signed February 1, 2020, that summarizes the second page. The summary on the first page indicates Mendez has "normal sinus rhythm" and "rare premature ventricular contractions." *Id.* at 46. The second page appears to be an EKG spreadsheet or printout. *Id.* at 47. Critically, there is no hospital name or doctor's name identified on either page. Further, there is little to connect these documents to Mendez's purported failure to prepare for, and attend, his deposition. Both appear to have been generated over a month before they were produced to Community Health's counsel.

Mendez did not appear for his scheduled deposition the next morning.

*3. Analysis*

Community Health now moves for the full dismissal of Mendez's case as a sanction for his second failure to appear for his scheduled deposition.

MEMORANDUM DECISION AND ORDER – 18

Federal Rule of Civil Procedure 37 authorizes sanctions against a party for non-compliance with a discovery order. Fed. R. Civ. P. 37(b)(2). Rule 37 allows a Court to impose various sanctions up to, and including, dismissal. Fed. R. Civ. P 37(b)(2)(A)(i)—(vii). The level of any sanction imposed is within the Court's discretion. *See O'Connell v. Fernandez–Pol,* 542 Fed. Appx. 546, 547–48 (9th Cir.2013) ("By the very nature of its language, sanctions imposed under Rule 37 must be left to the sound discretion of the trial judge."); *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014) ("Rule 37(b)(2)(A) authorizes the court to impose whatever sanctions are just when a party fails to comply with a discovery order, up to dismissal of part or all of the party's claims.").

To impose the sanction of dismissal, a court must first find that plaintiff's non-compliance was due to "willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993). "Willfulness, bad faith, or fault" does not require wrongful intent; rather, "[d]isobedient conduct not shown to be outside the party's control is by itself sufficient to establish willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F. 3d 906, 912 (9th Cir. 2003) (cleaned up).

Even after a finding of "willfulness, bad faith, or fault," the Court must weigh several factors when determining if dismissal is appropriate:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Anheuser-Busch, Inc. v. Nat. Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995). While the Court is not required to make explicit findings with respect to each of these factors, a

finding of willfulness, fault, or bad faith is required for dismissal to be proper. *Leon v. IDX Sys., Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

The Court must step back momentarily to discuss a nuance in Rule 37. Community Health has alleged that sanctions are proper under Rule 37(b)—failure to comply with a court order—*and* Rule 37(d)—failure to attend a deposition. It is important to note that while a finding of willfulness, bad faith, or fault is required under Rule 37(b), such a finding *is not* a prerequisite for imposing sanctions under Rule 37(d). *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). Rule 37(d) actually allows for direct sanctions to be imposed even without a prior court order compelling discovery and even where a party has not previously been warned for any rule misconduct. *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 n. 1 (9th Cir. 1988); *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

The interesting part about this case then is the fact that the Court's discovery order that was violated was an order to attend a deposition. Hence the interplay between subsections (b) and (d). Thus, at the outset, the Court notes that it *could* impose sanctions (including dismissal) based upon Rule 37(d) alone *without* finding any willfulness, bad faith, or fault on Mendez's part. The Court frankly could have done so after Mendez's first failure to appear for his deposition. The Court, however, was lenient and gave Mendez a warning along with another chance to comply. The Court could impose such a sanction at this juncture as well under Rule 37(d) *without* a finding of willfulness, bad faith, or fault. However, as the Court has done throughout this case, it will be lenient and use the more stringent standard in evaluating Mendez's conduct.

a. <u>Willfulness, Bad Faith, or Fault</u>

In this case, the Court finds that Mendez's lack of compliance was due to "willfulness, bad faith, and fault," and not due to circumstances outside of his control.

Mendez has now failed to appear for two scheduled depositions. His first failure was wholly without justification: he did not communicate his intentions to Community Health and simply elected not to show up because he felt like they needed to provide him with more discovery. These actions are a blatant affront to the rules and there is no valid explanation to excuse them.

Mendez's second failure was less egregious, but nonetheless, without justification. This time, Mendez at least communicated with Community Health in the days leading up to his deposition and indicated that he might need more time before proceeding. Critically, however, Mendez *never actually asked for more time.* As noted, Mendez expressed concern about his level of preparation approximately two weeks before his deposition was to take place. The Court's law clerk instructed Mendez to either work with opposing counsel to schedule a new date, or motion the Court for an extension. Dkt. 50-2, at 35. Counsel for Community Health likewise asked Mendez to propose different dates so that they could consider them. *Id.* at 41. Mendez did not heed the Court's law clerk's instruction or take advantage of Community Health's Counsel's offer. He *never* asked for an extension, *never* proposed new dates, and *never* actually said he needed more time. He simply cast doubt on his ability to be ready for his deposition. It was not until the night before his deposition that Mendez sent an email to Community Health's Counsel indicating he actually would not be ready for the deposition and that it would need to be rescheduled. This was also the point

at which, for the first time, Mendez alleged that he had some type of medical condition that was making preparations difficult. In short, although Mendez had ample opportunities to follow the Court's guidance or motion for a change to the Court's order, Mendez, once again, simply chose to do nothing.

This type of behavior is unacceptable. The Court does not make the following comments lightly. The Court treats all litigants, including *pro se* litigants like Mendez, equally. Mendez, however, has abused the Court's kindness[9] or simply ignored the court's warnings[10] seemingly without regard for any consequences or hoping to rely on his *pro se* status. The Court's patience has waned at times, but it has repeatedly given Mendez every opportunity to prosecute his case. But at a certain point, the Court must simply move on.

Mendez has already indicated he will appeal any decision the Court renders in this case that is not in his favor. Mendez has taken the same approach in his other cases that have proceeded before the undersigned. Mendez is no wallflower when it comes to litigation. As a *pro se* party, this is an admirable trait. However, it appears sometimes that Mendez is purposefully trying to make his situation, opposing counsel's situation, and the Court's situation *more* difficult. He then, in turn, blames the Court, opposing counsel, or

---

[9] As explained, Mendez frequently contacts the Court's law clerks to ask questions. Mendez has then used some of these responses as "gotcha" arguments—pitting something a law clerk said (informally) against another party, or using the law clerk's comments as legally binding authority for his actions. In this lawsuit, as well as his many others, Mendez has found ways to downplay his abilities to his advantage. For example, Mendez has relied on his lack of legal training to get certain accommodations—*which the Court provided.* However, on more than one occasion, Mendez then abused, misused, or even used those accommodations against opposing parties (and even in some instances, against the Court).

[10] As explained, Mendez's response brief to Community Health's Second Motion to Dismiss was 30 pages (10 pages over the limit). Despite the Court telling Mendez twice (Dkt. 66, Dkt. 70, at 2) that his brief could only be 20 pages, he nevertheless filed a 24-page brief (Dkt. 71).

"the system" for the difficulties he faces.

Even setting aside Mendez's prior failure to appear (or prior poor behavior in this case in general), it is not a stretch to say that Mendez's conduct leading up to his second deposition was willful and in bad faith. Mendez had the ability to communicate with opposing counsel and select a new deposition date, but he chose not to. Mendez had the ability to file a motion with the Court to ask for an extension, but he chose not to. Strikingly, both of these options were communicated to Mendez on *multiple* occasions by *multiple* people. His failure to remedy the situation and essentially ignore both the Court and opposing counsel was willful and in bad faith.[11] The Court next turns to Mendez's reasons for his non-compliance and analyzes whether those reasons were out of his control and justify his non-appearance.

For his part, Mendez claims that he was unable to attend the second deposition because: 1) he did not have time to review all the material Community Health "dumped" on him at the last minute; and 2) because he has some type of medical condition. Both assertions are questionable—as will be outlined shortly—but even taking all of what Mendez says as true, it *still* does not excuse his failure to engage with Community Health during the weeks preceding the deposition, nor justify his unilateral decision the night

---

[11] The Court finds it particularly interesting that Mendez never apologized to Community Health but simply said: "I suppose that the deposition will have to be rescheduled." Dkt. 50-2, at 45. This laissez-faire approach is another example of Mendez abusing the Court's leniency and disregarding the opposing party. There was no remorse in his decision to unilaterally terminate the deposition the night before it was set to occur. There was no consideration for Community Health's attorneys who had spent time preparing for the deposition. Instead, there was the casual and somewhat snide remark that he "supposed" the deposition would have to be rescheduled at a later time—almost assuming Community Health and the Court would have no issue with him simply rescheduling the deposition at his personal convenience or that there would be no consequences for his actions.

before to simply cancel the deposition.

First, as already eluded to, based upon Community Health's representations, most (if not all) of the discovery Community Health provided Mendez on February 5-6, 2020, was information he had already seen, had access to, and/or been provided. To be sure, 500 pages is a lot of information; however, Mendez had likely already seen much of that, but even if he had not, he had over two weeks to review the materials before his deposition.

Second, Mendez's "medical" situation is of questionable origin. There is little to no information that explains why the deposition could not proceed included on the two vague and redacted pages Mendez provided Community Health. Furthermore, the "records" appear to have been created many weeks before the scheduled deposition. Why Mendez could not provide them earlier is unknown.

Regardless, Mendez has not demonstrated that either of these situations were outside of his control or negated his duty to appear. In fact, both of these concerns could have been brought up, and remedied, long before the date of the deposition. In his current briefing, Mendez claims that the Court's January 22, 2020 order was prejudicial because it gave him "less time to prepare for a deposition and case as a whole." Dkt. 71, at 3.[12] Again, however, were this the case, Mendez could have easily motioned the Court for an extension—as directed by the Court—or worked with Community Health to secure a new

---

[12] The Court finds this statement somewhat puzzling given Mendez's numerous prior statements—in the record, but more prevalently in informal emails to the Court's law clerk—that this case was moving too slow. This case is, in fact, one of the older cases on the Court's docket. There have been significant delays and extensions of time in this case. Ironically, if those delays were caused by the Court or Community Health, Mendez has protested and decried his inability to access justice. Conversely, if the delays were at his request, Mendez suggests they were not an affront to Community Health, but necessary for his ability to pursue his case.

date—as directed by the Court and as offered by opposing counsel. Mendez did neither.[13]

In conclusion, the Court finds that Mendez's actions were willful, in bad faith, and frankly, his own fault. Mendez blatantly disregarded the Court's order that he needed to appear for his deposition or "face sanctions." He ignored the Court's advice to work with opposing Counsel or seek an extension. He ignored opposing counsel's invitation to find a better date for his deposition. The outcome of this debacle is of Mendez's own making. Moreover, there is nothing in the record to suggest Mendez's "[d]isobedient conduct [was] outside [his] control" and justified. *See Jorgensen*, 320 F. 3d at 912. Considering all available evidence, the Court finds Mendez's behavior inexcusable and worthy of sanctions.

b. *Anheuser-Busch* Factors

Having determined that Mendez's actions warrant some type of sanction, the Court must next determine whether dismissal—the sanction sought by Community Health—is appropriate, or if some lesser sanction will suffice. Again, the relevant factors the Court must consider when determining whether dismissal is appropriate are as follows:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

---

[13] Further undercutting Mendez's argument that he did not have time to prepare, and/or was suffering from a medical condition that impeded his progress, is the fact that he was actively participating in his *other* cases during this same timeframe. For example, Mendez filed a brief on January 10, 2020, in Case 1:19-cv-00092-DCN and *an entire new lawsuit* on February 6, 2020 (Case 1:20-cv-00061-BLW). *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (cleaned up) (A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

*Anheuser-Busch*, 69 F.3d at 348.

Where, as here, the violation of a court order serves as the basis for the terminating-sanction request, the Ninth Circuit has held that factors one and two (public interest in expeditious resolution of litigation and the court's need to manage its docket) support a terminating sanction while factor four (the public policy favoring disposition of cases on their merits) weighs against such a sanction. *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 1993); *Adriana Int'l Corp. v. Thoren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Ultimately, the third and fifth factors are determinative in a case such as this. *Adriana*, 913 F.2d at 1412.

(i)     *Factor 3 – The Risk of Prejudice to the Party Seeking Sanctions*

Here, Community Health has faced substantial prejudice in light of Mendez's actions. Mendez's failure to appear has resulted in numerous delays to Community Health's "ability to go to trial" and has "threaten[ed] to interfere with the rightful decision of the case." *Id.* Community Health has noted for months that it intends to move for summary judgment, but cannot do so without Mendez's deposition. This has frustrated Community Health's ability to defend itself, resulted in delays, and no doubt increased Community Health's legal fees.

What's more, the Ninth Circuit has specifically held that the "repeated failure of [a plaintiff] to appear at scheduled depositions . . . constitutes an interference with the rightful decision of the case." *Id.* The Court finds the third factor has been met: Mendez's actions have resulted in severe prejudice against Community Health.

MEMORANDUM DECISION AND ORDER – 26

*(ii)*      *Factor 5 – The Availability of Less Drastic Sanctions*

The Ninth Circuit requires a three-part test to determine whether a district court has properly considered the adequacy of less drastic sanctions: (1) whether the court implemented alternative sanctions before ordering default or dismissal; (2) whether the court warned the party of the possibility of default before ordering it; and (3) whether the court explicitly discussed the feasibility of less drastic sanctions and explained why they would be inappropriate. *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). All three conditions are met in this case.

First, the Court has already considered—and tried—less severe sanctions to ensure compliance, but to no avail. The Court's denial of Community Health's prior Motion to Dismiss was a lesser sanction. The imposition of a small fine was a lesser sanction. Granting Mendez another opportunity to appear for his deposition was a lesser sanction. Mendez did not avail himself of the Court's leniency. These lesser sanctions clearly had no effect on his behavior.

Second, while the Court did not specifically warn Mendez that failure to comply with its order could result in the full dismissal of this case, it clearly stated that if he failed to appear for his deposition for a second time he would "face sanctions." Dkt. 49, at 8.[14] Dismissal is one of the available sanctions enumerated under both Rule 37(b)—failure to comply with a Court order—and Rule 37(d)—failure to attend one's own deposition. Fed.

---

[14] Again, although the Court did not use the word "dismissal", it was (hopefully) apparent that the Court could consider that option in the future. After all, it would seem quite inequitable to not consider dismissal (simply for failure to use that word) when Community Health has sought that exact sanction now on two occasions and Mendez's behavior was the same both times.

R. Civ. P. 37(b)(2)(v) and (d)(3). As such, the Court's admonition to Mendez that further noncompliance would be sanctioned was sufficient to apprise him of the possibility of dismissal.

Third, as noted, the Court has already tried less severe sanctions in this case and finds that anything less than dismissal at this point is not feasible. Mendez does not have the ability to pay monetary fines or attorneys' fees and trying to craft some type of hybrid discovery sanction would likely be fruitless at this late juncture. Mendez has failed on two separate occasions—without justification—to appear for his deposition. Allowing his deposition to proceed at this point (even with some type of accompanying sanction) is almost no sanction at all. The Court has little confidence in the persuasiveness of any lesser sanction due to Mendez's blatant and repeated failures to abide by its prior orders.

Although *pro se*, Mendez "is expected to abide by the rules of the court in which he litigates." *Carter v. C.I.R.*, 784 F.2d 1006, 1008 (9th Cir. 1986); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("pro se litigants are bound by the rules of procedure."). Mendez has demonstrated an unwillingness to abide by the Court's orders and the only sanction available at this point is dismissal.

### 4. Conclusion

Despite Mendez' prior inexcusable failure to appear for his scheduled deposition, the Court gave him another chance. The Court instructed Mendez to work with Community Health to "find a suitable date and time that works for both parties to hold [his] deposition." Dkt. 49, at 8. The Court also warned Mendez that failure to appear at any rescheduled deposition would result in sanctions.

MEMORANDUM DECISION AND ORDER – 28

Mendez selected the date of February 20, 2020 for his deposition. He then failed to appear. And while Mendez brought up concerns about being prepared over two weeks before the deposition—thus indicating he had ample time to work with Community Health to reschedule—he chose not to engage, not to heed the Court's advice, and not to accept Community Health's offer to reschedule the deposition. He chose instead to contact Community Health less than 24 hours before his deposition and unilaterally announce the deposition could not move forward. The reasons Mendez now puts forth as an excuse for his failure to appear (needing more time and/or having a medical condition) were known long before the deposition and could have been resolved. In short, Mendez's failure to comply with the Court's order to appear at his deposition was not outside of his control, but was based upon choices he made. Those choices are indicative of willfulness, bad faith, and fault.

In light of this finding, the Court is left with little choice under Rule 37. The Court let Mendez's unjustified behavior slide the first time this happened with little more than a slap on the wrist. That gesture of leniency was ignored, and the behavior happened again. The Court has considered Mendez's "deposition behavior," as well as his general behavior throughout this case in deciding the appropriate level of sanction. In analyzing the record, the Court finds that four of the five relevant *Anheuser-Busch* factors weigh in favor of dismissal. After years of leniency, second chances, and little to no repercussions for numerous oversights, the Court has no choice but to dismiss Mendez's case.

///

///

## IV. ORDER

THE COURT HEREBY ORDERS THAT:

1.      Community Health's Motion to Strike (Dkt. 67) is GRANTED. Mendez's Second Motion to Compel (Dkt. 61), Motion for Sanctions (Dkt. 62), and Second Motion for Leave to Amend (Dkt. 63) are STRICKEN.

2.       Community Health's Motion to Dismiss and for Sanctions (Dkt. 50) is GRANTED. This case is DISMISSED with PREJUDICE and CLOSED.

3.      The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: February 9, 2021

David C. Nye
Chief U.S. District Court Judge